AO 472  (Rev. 12/03)  Order of Detention Pending Trial

# UNITED STATES DISTRICT COURT

EASTERN  District of  MICHIGAN

UNITED STATES OF AMERICA

V.

LAVERT DAFNEY
*Defendant*

**ORDER OF DETENTION PENDING TRIAL**

Case  05-80617-05

In accordance with the Bail Reform Act, 18 U.S.C. § 3142(f), a detention hearing has been held.  I conclude that the following facts require the detention of the defendant pending trial in this case.

**Part I—Findings of Fact**

☐ (1) The defendant is charged with an offense described in 18 U.S.C. § 3142(f)(1) and has been ☐ federal ☐ stat or local offense that would have been a federal offense if a circumstance giving rise to federal jurisdiction had   that is
    ☐ a crime of violence as defined in 18 U.S.C. § 3156(a)(4).
    ☐ an offense for which the maximum sentence is life imprisonment or death.
    ☐ an offense for which a maximum term of imprisonment of ten years or more is _____.*
    ☐ a felony that was committed after the defendant had been convicted of two or more prior federal offenses described in 18 § 3142(f)(1)(A)-©, or comparable state or local offenses.

☐ (2) The offense described in finding (1) was committed while the defendant was on release pending trial for a federal, state or local
☐ (3) A period of not more than five years has elapsed since ☐ date of conviction  ☐ release of the defendant from imprisonment for the offense described in finding (1).
☐ (4) Findings Nos. (1), (2) and (3) establish a rebuttable presumption that no condition or combination of conditions will reasonably safety of (an) other person(s) and the community.  I further find that the defendant has not rebutted this presumption.

**Alternative Findings (A)**

☒ (1) There is probable cause to believe that the defendant has committed an offense
    ☒ for which a maximum term of imprisonment of ten years or more is   the Controlled Substances Act   .

☒ (2) The defendant has not rebutted the presumption established by finding 1 that no condition or combination of conditions will the appearance of the defendant as required and the safety of the community.

**Alternative Findings (B)**

☒ (1) There is a serious risk that the defendant will not appear.
☐ (2) There is a serious risk that the defendant will endanger the safety of another person or the community.
    See attached 3 pages.

**Part II—Written Statement of Reasons for Detention**

I find that the credible testimony and information submitted at the hearing ☐ clear and convincing  ☒ a preponderance of the evidence  that
no condition or combination of conditions will reasonably assure the appearance of the defendants

**Part III—Directions Regarding Detention**

The defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel.  On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the defendant to the United States marshal for the purpose of an appearance in connection with a court proceeding.

August 1, 2005                                s/ Steven D. Pepe
Date                                         *Signature of Judge*

Steven D. Pepe, United States Magistrate Judge
*Name and Title of Judge*

*Insert as applicable:  (a) Controlled Substances Act (21 U.S.C. § 801 *et seq.*); (b) Controlled Substances Import and Export Act (21 U.S.C. § 951 *et seq.*); or © Section 1 of Act of Sept. 15, 1980 (21 U.S.C. § 955a).

Defendant Dafney is charged with 23 other defendants on an indictment charging him with Conspiracy to Distribute and Distribution of Controlled Substances in violation of 21 U.S.C. § 846 and § 841(a)(1) (Count One); Conspiracy to Launder Monetary Instruments in violation of 18 U.S.C. § 1956(a)(1)(a)(I) and § 1956(h) (Count Three), and three Counts of Use of a Telephone to Facilitate a Drug Conspiracy in violation of 21 U.S.C. § 843(b) (Counts 13, 16 &27).  In total, approximately $13,000,000.00 in cash and 8,000 pounds of marijuana have been seized during this investigation since it began in March 2004. The government proffered that the alleged kingpin of the operation, Quasand Lewis, received in February 2004 alone 17,000 pounds of marijuana with an approximate wholesale value of $14 million and retail value of as much as $17 million.

Defendant Dafney is a 33 year-old (dob 10/18/1971) single father of three children who live with their mother, Cassia Seals.  He reported to Pretrial in Toledo where he was arrested he has no contact with his children or their mother.  He has two sisters living in the Detroit with whom he has no regular contact.  He is a resident and native of the Detroit and reports residing with his aunt, Lynn Wordlaw, since his parents died.  Lynn Wordlaw confirmed defendant stays with her and her husband about 2/3rd of time and maintains a room at her home.  She is willing to put up her home, on which she has about $30,000 equity, to serve as third party custodian, and employ defendant in her office cleaning business.

Defendant reported attending High School to the 12th grade without graduating, though a pre-sentence report from Wood County, Ohio, for a 2000 forgery charge indicates 10th grade, which his counsel asserted at the detention hearing.  Defendant reported being unemployed for the past 3-4 months and has no income.  He last worked landscaping for about 6 weeks and has never had a steady job.  He reported no assets or liabilities.

Defendant admitted daily use of marijuana and has never been in a substance abuse program.  The Wood County pre-sentence report indicated he began using marijuana at age 21 and he was using it daily then also.

In the indictment, Defendant Dafney is noted to be the"right hand man" of the "high level manager and leader of section of the organization," Saeeda Walker.  Defendant Dafney allegedly oversaw her incoming shipments of marijuana and collection of payments for them (Indictment p.6 & p. 24).

Proffers by the government at the hearing, with the consent of defense counsel, demonstrated that Lavert Dafney was also a trusted lieutenant in Detroit of Quasand Lewis. In 2000, defendant Dafney was arrested in Arizona driving a vehicle purchased by Lewis which had a hidden trap in it likely used to transport drugs and drug proceeds or a firearm.  On July 15th, 2004, defendant was followed by surveillance officers from Michigan to the Cleveland airport where Dafney dropped off Lewis who attempted to board an airplane using an alias identity.
Defendant Dafney maintains a place for Lewis[1] to stay when in Detroit, and not at his Fontana, California or Atlanta, Georgia residences.  In March 2005, the residence at 45511 Stonewood Drive, Canton, Michigan was apparently purchased (likely with drug proceeds) for Dafney, in a nominee name.  This residence was not indicated in the Pretrial Services report.  Records indicate defendant and Lewis were exploring the purchase of a $500,000 property in France.
On July 18, 2005, government agents searched defendant's Stonewood residence and seized 5 firearms, over $10,000 currency, drug ledgers and a money counter.  Three of the firearms were found in the closet of Dafney's bedroom. Following Dafney's arrest on July 19, Mrs. Wordlaw, and his girlfriend Leteshia Coleman went to the Stonewood condo to remove Dafney's clothing from the master bedroom where Dafney stayed.  Ms. Coleman also attempted to take a voice scrambler.

---

[1] Quasand Lewis has at least two other residences in Fontana, California and Atlanta, Georgia. Records found during the search of Dafney's Stonewood residence reveal that Lewis or Dafney were searching for property to purchase in France for $500,000.

In the master bedroom at Stonewood, agents found three firearms, including a H&K high powered rifle, with a tripod attached, loaded with a bullet in the chambers and an obliterated serial number. They also found a 44 magnum revolver and a Thunder Five revolver, which shoots shotgun shell rounds. A Glock .40 caliber semi-automatic handgun, loaded with a round in the chamber, was found in the second bedroom closet and another Glock .40 caliber semi-automatic handgun was found in a holster under the front seat of defendant Dafney's girlfriend's vehicle, which was located in the garage of the Stonewood residence. Surveillance officers had observed Dafney drive this vehicle during the course of the investigation. The money counter was found in the hallway closet.

The Toledo Pretrial Services report states that "According to the arresting agent, the defendant was arrested at Cedar Point Amusement Park and was in possession of a firearm." The case agents did not have additional information on this charge, and defense counsel indicated that defendant denied it. Yet, when asked if defendant would provide the Court with a declaration under penalties of perjury to that effect, without any cross examination or live testimony on it, that was refused.

Wiretap evidence and visual surveillance by agents tie defendant Dafney and co-defendant Giovanni Ruanova (D3), the Mexican broker who came to Detroit to pick up drug payments to a seizure of $845,000 on December 5th, 2004, and a seizure of $1,000,000 on January 17th, 2005. On December 5th, 2004, defendant was heard telling Ruanova that he was collecting a big nickle ($500,000) for him. This occurred a few hours before the police seized $845,000 in two bags from a courier who had been given the suitcases by Ruanova. In mid-January, 2005, courier co-defendant Adam Douglas (D-21) was intercepted attempting to deliver $1,000,000 to Ruanova. Wire intercepts between Defendant and Ruanova show that Defendant was involved, because after the January 17 seizure, Dafney called Ruanova to tell him that law enforcement had seized the money, and saying that "there had been an altercation."

Defendant Dafney also was directly tied to a warehouse on Fitzpatrick Street in Detroit where 4,000 pounds of marijuana was seized on May 4th. Immediately prior to the mairjuana seizure, Dafney drove a vehicle out of the warehouse and led surveillance officers on a high speed chase up to 70 miles an hour on residential streets of Detroit. During this chase a firearm was thrown out of Dafney's vehicle. Once Dafney stopped the vehicle in the middle of an intersection, he and two associates fled on foot and only Dafney was apprehended. Seventy pounds of marijuana was seized from Dafney's vehicle.

In addition to the evidence of drug and money involvement, Defendant Dafney may be tied to the attempted murder of two individuals targeted by Quasand Lewis's organization. One of those individuals was co-defendant/victim Robin Wilson (D-7), who immediately following the shooting called detained co-defendant Edward Walker (D-4), to say that Quasand Lewis and Dafney were responsible for his attempted murder. Robin Wilson based this accusation on the fact that Dafney was the only person who knew the location of Wilson's home, where the attempted murder occurred. Further, Wilson's home was a location where Dafney would go when collecting drug money. Government Exhibits 16 A, B, C, D, show Robin Wilson's Magnum riddled with bullets from his attempted assassination. Other wire intercepts between Edward Walker and his sister Saeeda Walker (D-6) repeat his belief that Lewis and Dafney were involved in the shooting because Wilson did not do drug business out of his home but Dafney knew its location.

Dafney was also connected to the attempted murder of Marcus Smith. Photos were offered at the hearing showing that someone had attempted to kill Mr. Smith on April 23, 2005. Marcus Smith, a postal employee, had been targeted by the organization because Lewis believed that Smith was related to a Tommy Hodges, a drug dealer rival of co-defendant Lewis, and that Smith had been "talking about" Lewis and other members of the conspiracy. Smith's co-worker, Deborah Robinson, is a friend of co-defendant Saeeda Walker (D-6), who is Quasand Lewis's assistant in charge of the drug distribution operation in Detroit. On April 20, 2005, Robinson was intercepted providing Smith's physical description, vehicle license plate number, physical description and work hours at the post office to Saeeda Walker.

Shortly thereafter, defendant Dafney was a minor participant in telephone conversations planning Smith's attempted murder with Quasand Lewis, Saeeda Walker, Jamil Carter a/k/a Leon Pierce (D-9), a/k/a

"Cone", one of the "shooters" for the organization, and an unidentified individual named "L", suspected to be another shooter for the organization. During one of the conversations offered at the hearing, (call 1392, dated 4/20/05), Quasand Lewis talks to Carter and asks him whether their scanners need chargers or batteries. He then asks Carter about an automobile, instructs him to take the back part (plate) off, and informs him that if they use Carter's car, the organization will get him another one so he can abandon the car after the shooting. In the background, defendant Dafney is heard relaying Lewis' instructions directing Carter to a location to pick up the other suspected shooter named "L". The attempted killing occurred three days later on April 23rd, although Smith survived the shooting. Government Exhibits 15 A & B show the two bullet holes in Smith's neck. While there is no indication defendant Dafney was involved in the shooting, it is clear he was trusted enough by Lewis and Saeeda Walker to have been privy to its planning with Lewis and others.

The issue of dangerousness in this case is more easily resolved than that of flight. While defendant was involved as a trusted lieutenant to the top players in a large scale marijuana distribution enterprise, their organization is now defunct in light of the current 24-defendant indictment, the multiple arrests, and the detention of the principle players. While the proffered third party custodian cannot physically prevent flight, her lack of criminal involvement suggests she is unlikely to tolerate further drug dealing or attempted flight by Dafney. Further, her knowledge that she is bound, under penalty of a felony charge, to report any attempts to flee or engagements in unlawful activity, knowing that an the electronic monitor will demonstrate any neglect or delay in her duty, provides ample incentive to uphold the terms of the house arrest. Moreover, Defendant is under the close scrutiny of the federal drug enforcement authorities as well as our Pretrial Services. Dafney would have difficulty returning to a pattern of drug dealing without the acquiescence of his custodian, particularly considering that his former drug distribution network is no longer in operation. Thus, there does not exist clear and convincing evidence that Defendant would pose a danger to the community given a strict set of conditions including virtual house arrest.

Yet the question of flight must also be assessed. When deciding whether a defendant must flee, the Court may look at relevant past behavior, in addition to factors such as the existence of a tether and a third party custodian. Defendant Dafney has attempted flight on two prior occasions. On May 4, 2004, he put himself and others in danger during the attempted high speed escape noted above. Further, Dafney was charged in 2002 with criminal felony charges for fleeing and eluding (which were likely pled down to a misdemeanor attempt charge). Defendant Dafney's past flight record erodes the confidence this Court can assure his appearance for trial, notwithstanding a tether and good faith offer of his aunt to serve as third party custodian. His aunt's inability to physically restrain defendant and the possibility of a mid-night departure create too high a risk of flight.

Defendant Dafney reported no assets and has requested and obtained appointed counsel, suggesting he does not have any significant funds available to him to aid in fleeing. Yet, he was more closely connected to the alleged kingpin of this conspiracy than many of the other defendants. Millions of dollars are still unaccounted for from this conspiracy, notwithstanding the millions that have been seized. Although defendant Lewis is incarcerated, he may still have friends and associates not in custody with the resources to help Dafney flee.

The close association of defendant Dafney to co-defendants Lewis and Saeeda Walker also makes him a potential source of substantial incriminating information against Lewis and others. This might have two consequences. First, it might heighten the desire and willingness of those seeking to protect Lewis and Walker to convince and assist defendant Dafney to flee. Alternately, concerns about his substantial knowledge might make him a target of potential harm. Given what defendant Dafney likely knows about Lewis, Walker and others, and given the history of violence in this organization, defendant Dafney may feel vulnerable being under house arrest, unarmed at the unsecured home of his aunt where he would be a "sitting duck" for injury or for his forcible removal.
Due to the risk of flight, Defendant Dafney is ordered to be detained pending trial.